IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN C. MOORE, JR., | ) | CASE NO. 1:04 CV 242 |
| | ) | |
| Petitioner, | ) | JUDGE LESLEY WELLS |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| JAMES HAVILAND, Warden, | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | |

## Introduction

Before the Magistrate Judge for his Report and Recommendation is the petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by John Moore, Jr.,[1] as amended.[2] Moore, who is now incarcerated in the Southern Ohio Correctional Facility for a term of thirty-three years,[3] asserts four grounds for relief arising from his 2000 conviction on one count of aggravated robbery and two counts of kidnapping with firearm specifications by a Cuyahoga County, Ohio jury.[4]

---

[1] ECF # 1 (petition).  Moore was here represented by J. Dean Carro.

[2] ECF # 26 (amendment).  Moore here proceeds *pro se.*

[3] ECF # 27 (supplemental return of writ).  *See*, *State v. Moore*, No. 86244, 2006 WL 439961 (Ohio App. 8 Dist. Feb. 23, 2006) (remanding for resentencing); *see also*, www.drc.state.oh.us (website of the Ohio Department of Rehabilitation and Correction) indicating that Moore was resentenced on May 23, 2006.  The site also notes that Moore is currently serving time for multiple other convictions.

[4] *See*, *State v. Moore*, No. 78751, 2002 WL 664104 (Ohio App. 8 Dist. April 18, 2002).

The state acknowledges custody of Moore on the specified conviction but contends that the asserted grounds for the writ are time barred, procedurally defaulted, and/or without merit.  Thus, the state argues, Moore's petition should be denied.[5]

For the reasons stated below, the Magistrate Judge recommends that ground one of the petition be conditionally granted, ground two be dismissed as moot, and that grounds three and four be dismissed as time-barred.

## Facts

### A.    Trial

The facts concerning Moore's trial and conviction were set forth by the Ohio Court of Appeals, Eighth District, which affirmed that decision in 2002:

> Defendant and his accomplice arrived very early one Sunday morning at the Hard Rock Café in Tower City.  They told the night cleaner who let them in that they were there to interview for jobs.  They proceeded to the "safe room" where the kitchen manager was finishing counting money.  When defendant's accomplice held a gun to her head, the manager opened the safe and gave him the paper money.  Moore demanded that she give him the coins as well.  The accomplice then left the room and returned with another female employee.  The men proceeded to tie up both women with duct tape.  They also gagged the employee with tape but left the manager without a gag when she told them she had allergies and would choke if she were gagged.

> After the men left, the women managed to free themselves and called the police.  The manager supplied the police with a surveillance tape of the robbers, but because the tape had been reused so many times the quality of the pictures was poor.  After NASA enhanced the tapes, still pictures were taken from them which showed defendant in a distinctive baseball cap.

> Several days prior to this robbery, a private home had been robbed and its occupant also had been bound and gagged with duct tape.  Defendant's

---

[5] ECF # 16 (return); ECF # 27 (supplemental return).

accomplice, Lamar Chaney, was identified in a line-up as one of the perpetrators in the private home robbery. The accomplice was then identified by the manager, employee, night cleaner and a fourth employee as one of the robbers at the Hard Rock Café.

The detectives questioned one of the accomplice's co-defendants, Trent Willis, from the private home robbery, who led police to defendant's home. The police searched defendant's home and later questioned him. Defendant signed a written confession to the Hard Rock Café robbery. The police also took a photo of defendant in the distinctive baseball cap from defendant's home. Finally, an analysis of phone records corroborated all the details contained in defendant's confession.[6]

## B.    Direct appeals

### 1.    The conviction

Subsequent to the conviction, Moore, now represented by different counsel,[7] appealed[8]

and raised four assignments of error:

1.    The trial court deprived John Moore of his constitutional right to effective assistance of counsel when it failed to make an adequate inquiry into Mr. Moore's complaint that his trial counsel was not doing an acceptable job and had Mr. Moore proceed in the trial with the same attorney;

2.    The trial court erred and denied John Moore his constitutional right to effective assistance of counsel when it denied his motion to waive counsel and represent himself;

---

[6] *Moore*, 2002 WL 664104, at *1. Factual findings made by the state appellate court on its review of the trial record are presumed correct. 28 U.S.C § 2254(e)(1); *Brumley v. Wingard*, 269 F.3d 629, 637 (6th Cir. 2001).

[7] The Cuyahoga County Public Defender's Office represented Moore in this appeal. ECF # 18 at 18. Robert Tobik represented Moore at trial. *Id.* at 10.

[8] The appeal was filed October 23, 2000. *Id.* at 25. Moore's brief on appeal was filed April 20, 2001. *Id.* at 18.

3.     John Moore was denied his constitutional right to cross-examine witnesses against him when the trial court improperly overruled his request, under Ohio Rule of Criminal Procedure 16(B)(1)(g), to cross-examine a state's witness with material inconsistencies in her prior statement;

4.     John Moore has been deprived of his liberty without due process of law by his sentences, as his sentences do not comport with Ohio's new sentencing law.[9]

One day afer filing this brief, Moore made a *pro se* motion to file a supplemental brief with additional assignments of error.[10]  On July 27, 2001 the Ohio appeals court granted Moore's request and thereupon, again acting through the Cuyahoga County Public Defender, Moore filed a supplemental brief raising four additional assignments of error:

1.     Was John Moore deprived of his constitutional right to a fair trial when the trial court took no action following Mr. Moore's allegations that a police officer was signaling desired responses to a state's witness?

2.     Was John Moore denied his Sixth Amendment right to confront the witnesses against him when a police officer introduced hearsay evidence by reading from a police report?

3.     Was John Moore denied his constitutional right to effective assistance of counsel when the trial court refused to grant a reasonable continuance so that counsel could prepare adequately for trial?

4.     John Moore was denied his constitutional right to effective assistance of counsel when counsel both failed to file an affidavit of prejudice against the judge presiding over his trial with the Cuyahoga Court of Common Pleas and when counsel failed to preserve the record and denied Mr. Moore of an otherwise valid appellate issue?[sic][11]

---

[9] *Id.* at 19.

[10] *See*, *id*. at 122.

[11] *Id.* at 121.

-4-

After the state opposed these assignments of error,[12] the Ohio Court of Appeals, Eighth District, on April 18, 2002, affirmed the judgment of the trial court and overruled all but one of Moore's assignments of error, holding that the imposition of sentence was improper and so remanded the case for resentencing.[13]

On August 7, 2002, Moore, now proceeding through the University of Akron School of Law Appellate Review Office, sought to file a delayed appeal[14] with the Ohio Supreme Court.[15] The Ohio Supreme Court approved the motion,[16] and Moore thereupon asserted four propositions of law:

1.  The trial court deprived Appellant Moore of his Sixth and Fourteenth Amendment rights to represent himself when it overruled his motion to waive counsel and represent himself;

2.  The trial court deprived Appellant Moore of his Sixth Amendment right to effective assistance of counsel when it failed to make an adequate and timely inquiry into Moore's complaints;

---

[12] *Id*. at 102-15 (brief in opposition) and 159-66 (supplemental brief).

[13] *Id*. at 167-203; *Moore*, 2002 WL 664104.

[14] Moore's brief in support of his habeas petition relates that on June 3, 2002 he *pro se* filed a timely notice of appeal to the Ohio Supreme Court which was denied.  ECF # 18, Ex. 2 at 5.  The state observes that the "Ohio Supreme Court Clerk's Office has no record of any such filing or Order."  ECF # 16 at 4, n.4.

[15] ECF # 18 at 204.  Principally, Moore argued that his untimeliness arose from his difficulty in obtaining representation as an indigent for his appeal to the Ohio Supreme Court since his former trial attorney, whose representation was the subject of Moore's claims of ineffective assistance, had, subsequent to the appellate court proceedings, been appointed the Chief Public Defender of Cuyahoga County, whose office had represented Moore on appeal, thus creating a conflict of interest.  *See*, *id.* at 206.

[16] *Id.* at 249.

> A.    The trial court deprived Appellant Moore of his constitutional right to effective representation of counsel when it failed to make an adequate inquiry into counsel's effectiveness;
>
> B.    The trial court deprived Appellant Moore of his constitutional right to effective assistance of counsel when it refused to grant a reasonable continuance so that counsel could adequately prepare for trial;
>
> C.    Appellant Moore was deprived of his constitutional right to effective assistance of counsel when counsel failed to file an affidavit of prejudice against the judge presiding over his trial with the Cuyahoga County Court of Common Pleas and when counsel failed to preserve the record and denied Appellant Moore an otherwise valid appellate issue;

> 3.    Appellant Moore was denied his Sixth Amendment right to cross-examine the witnesses against him when the trial court improperly overruled his request under Crim. R. 16(B)(1)(g) to cross-examine a state's witness with material inconsistencies in her prior statement;

> 4.    Appellant Moore was denied his Sixth Amendment right to confront the witnesses against him when a police officer introduced hearsay evidence from a co-defendant by reading from a police report.[17]

The state responded in opposition,[18] and, on January 29, 2003, the Ohio Supreme Court denied leave to appeal.[19]  No writ of certiorari was sought from the United States Supreme Court.

---

[17] *Id*. at 251.

[18] *Id.* at 299-307.

[19] *Id.*, Ex. 16.

### 2.     The sentence

Proceeding on a separate track, Moore pursued relief for claims arising from his sentencing.  The original sentence was set aside as part of the judgment affirming conviction entered by the appeals court in 2002.[20]  Following the remand for re-sentencing, Moore's sentencing was again reviewed by the state appeals court, which again remanded the case for yet another sentencing.[21]  The website for the Ohio Department of Rehabilitation and Correction notes that Moore was re-sentenced on May 23, 2006.[22]

## C.     Federal habeas claim

### 1.     Original petition

On February 11, 2004, Moore, again represented by the University of Akron School of Law Appellate Review Project, filed the present petition seeking a writ of habeas corpus from this Court on the following two grounds for relief:

> 1.     The trial court deprived Petitioner Moore of his Sixth and Fourteenth Amendment rights to self-representation when it overruled his motion to waive counsel and represent  himself.
>
> 2.     The trial court deprived Petitioner Moore of his Sixth Amendment right to effective assistance of counsel when it failed to make an adequate and timely inquiry into Petitioner Moore's complaints.[23]

The state filed a return of the writ contending that these asserted grounds for relief should be denied because the state appeals court did not unreasonably apply or did not act

---

[20] *Moore*, 2002 WL 664104, at *9.

[21] *Moore*, 2006 WL 439961, at *5.

[22] *See*, n.3, *supra*.

[23] ECF # 1, Ex. 2 at i.

contrary to the applicable clearly established federal law.[24]  Moore filed a traverse taking issue with the state's arguments only as to the first ground for relief.[25]

## 2. *Amended petition*

Subsequent to filing the traverse, Moore, now proceeding *pro se*, sought[26] and was granted leave[27] to amend the petition.  The amendment presents an additional two grounds for relief:

3.     John Moore was denied his constitutional right to cross-examine the witnesses against him when the trial court improperly overruled his request under 16 (b)(1)(g) to cross-examine a witness with material inconsistencies in her prior statement.

4.     John Moore was denied his Sixth Amendment right to confront witnesses against him when a police officer introduced hearsay evidence by reading from a police report.[28]

Moore contends that, despite making "numerous attempts to have [the] Akron School of Law include these issues to no avail," his reading of *Crawford v. Washington*[29] "convinced this defendant that these issues not only had merit but also insured that the current conviction had no legal standings [sic]," and thus required him to proceed *pro se*.[30]

_____

[24] ECF # 16 at 9, 13.

[25] ECF # 22.

[26] ECF # 26.

[27] Non-document order of  July 21, 2005.

[28] ECF # 26 at 4.

[29] *Crawford v. Washington*, 541 U.S. 36 (2004).

[30] ECF # 26 at 2.

The state, in its supplemental return, contends that, because these new grounds for relief were known to Moore at the time he filed his original habeas petition and because the amended petition was submitted beyond the one-year period for raising habeas claims prescribed by statute, these two new grounds are time-barred.[31]  Alternatively, the state maintains that one or both of these additional claims are procedurally defaulted,[32] involve a purely factual issue already resolved by the state courts,[33] and/or were resolved by the state courts in a manner not contrary to nor by an unreasonable application of clearly established federal law.[34]

Moore, once more represented by the University of Akron School of Law Appellate Review Project, initially responded to the state's supplemental return by seeking to stay these proceedings[35] and, alternatively, by contending that the one-year statute of limitations should be calculated from the time the trial court's first resentencing order became final.[36]  The Magistrate Judge denied the motion to stay.[37]

---

[31] ECF # 27 at 10.

[32] *Id.* at 13.

[33] *Id*.

[34] *Id.* at 16.

[35] ECF # 28.  Moore was concerned that a then-pending state appeal from his re-sentencing might make his habeas petition unexhausted.  That appeal has now been concluded and Moore re-sentenced according to its ruling.  *See*, n.3, *supra*.  In any event, Moore's claims in his amended petition are untimely.  *See* discussion at III, A *infra*.

[36] ECF # 29.

[37] ECF # 30.

Moore thereupon submitted what was styled a "merit reply" to the state's supplemental return in which Moore asserts that the state appeals court did not clearly rely on a state procedural rule in addressing what is now the third ground for relief, so procedural default is not applicable.[38]  Further, Moore argues that the state did not prove that the error from allowing the hearsay, as is alleged by the current ground four, was harmless and so cannot be a reasonable application of or in conformity with clearly established federal law.[39]

## Analysis

### A.    Grounds three and four – statute of limitations

As noted, Moore's third and fourth grounds for relief were added to his habeas petition by amendment originally presented on October 10, 2004.[40]  The state has argued that the applicable one-year statute of limitations began to run on June 13, 2002, forty-five days after the decision of the Ohio appeals court affirming Moore's conviction.  The statute ran for fifty-five days, from June 13 to August 7, 2002, the date when Moore filed a motion for a delayed appeal in the Ohio Supreme Court.  The statute was tolled until April 29, 2003, which is ninety days after the Ohio Supreme Court dismissed Moore's delayed appeal.  As the state notes, the statute would then have expired on March 4, 2004, well before Moore sought on October 10, 2004 to amend his habeas petition with two additional grounds.

---

[38] ECF # 31 at 3.

[39] *Id*. at 10.

[40] ECF # 26.

Moore does not dispute the state's calculation of time, but argues, based on his reading of the Eleventh Circuit decision in *Walker v. Crosby*,[41] that the one-year statute of limitations should be calculated from the date of his first resentencing, not the dismissal of his delayed appeal.

Moore's interpretation of *Walker* is inapposite.  As the district court in *Sykosky v. Crosby*[42] reasoned as to the same argument made by Moore here, in a holding recently affirmed by the 11th Circuit:[43]

> Petitioner's reliance on *Walker* is misplaced.  In *Walker*, the Eleventh Circuit held that the statute of limitations for a habeas action that contains claims challenging the resentencing judgment as well claims challenging the original judgment of conviction begins to run on the date that the resentencing judgment became final and not the date the original judgment became final. In the instant case, Petitioner's habeas petition contains claims challenging only the original judgment of conviction; he does not challenge the resentencing judgment.  Therefore, *Walker* is inapplicable.[44]

Moore is in precisely the same situation as the habeas petitioner in *Sykosky*.  Moore's amended petition does not challenge any aspect of the sentencing but merely asserts claims arising from the original judgment of conviction.  As such, the reasoning of *Walker* is of no avail.

---

[41] *Walker v. Crosby*, 341 F.3d 1240 (11th Cir. 2003).

[42] *Sykosky v. Crosby*, No. 3:04CV416/MCR/EMT, 2005 WL 1334600 (N.D. Fla. June 6, 2005).

[43] *Sykosky v. Crosby*, No. 05-14341, 2006 WL 1813895 (11th Cir. (Fla.) June 30, 2006).

[44] *Sykosky*, 2005 WL 1334600, at *2 (internal citation omitted).

Moreover, in the absence of case authority from the Supreme Court or from this Circuit, the Magistrate Judge is not persuaded that, even in more similar circumstances, *Walker* presents a solid rationale for understanding the statute of limitations in 28 U.S.C. § 2255. In *Fielder v. Varner*,[45] a Third Circuit opinion authored by now-Justice Samuel Alito, the court rejected the reasoning of *Walker*. Then-Judge Alito observed that requiring a habeas petition consisting of multiple claims to be considered, for purposes of applying the statute of limitations, as a single filing to be governed by a single date on which the statute begins to run, "fails on its own terms" and "neglects to pay close attention to the statutory language."[46]

In addition, Judge Alito's opinion in *Fielder* goes on to show that statutes of limitations, though often drafted in the language of a single claim, are usually applied in a multi-claim complaint on a claim-by-claim basis.[47] Further, the *Fielder* opinion notes that adopting the *Walker* interpretation would have the "strange effect of permitting late-accruing federal habeas claims to open the door for the assertion of other claims that had become time-barred years earlier."[48]

---

[45] *Fielder v. Varner*, 379 F.3d 113 (3rd Cir. 2004).

[46] *Id.* at 118.

[47] *Id.* at 119. ("Although these provisions are framed on the model of the one-claim complaint, it is understood that they must be applied separately to each claim when more than one is asserted.")

[48] *Id.* at 120.

It is important to note that *Fielder* also definitively held that the language employed by an earlier panel of the Third Circuit in *Sweger v. Chesney*,[49] stating that the statute of limitations for a habeas petition applies to the whole petition and not on a case-by-case basis[50] – language cited approvingly here by Moore[51] –  was non-binding dicta.[52]

Accordingly, since Moore's habeas petition does not contain any claims arising from his sentencing, and so does not present a similar situation to that in *Walker*, the Magistrate Judge is persuaded that, even without reaching the issue of whether the limitations statute of 28 U.S.C. § 2244(d) (1) should, in petitions containing multiple claims be applied to the petition as a whole by reference to the latest timely claim, Moore's claim is time-barred since the holding in *Walker* is distinguishable.[53]

Further, should the District Court conclude that it must reach the issue of whether, as Moore argues, a habeas petition is a single entity and, by extension, its timeliness be computed by reference to the conclusion of the last collateral attack on any part of the state proceedings against the petitioner, the Magistrate Judge recommends that the Court find first that "28 U.S.C. § 2244(d)(1), like other statute of limitations provisions, must be applied on

---

[49] *Sweger v. Chesney*, 294 F.3d 506 (3rd Cir. 2002).

[50] *Id.* at 514-15.

[51] ECF # 29 at 3.  (Moore's filing here is not paginated and the page number provided is the computation of the Magistrate Judge.)

[52] *Fielder*, 379 F.3d at 122.

[53] *Sykosky*, 2005 WL 1334600, at *2.

a claim-by-claim basis"[54] and that the statute of limitations here began to run again ninety days after the dismissal of Moore's delayed appeal to the Ohio Supreme Court[55] and without reference to his collateral attack on his sentence.[56]

Moreover, although not argued by the parties, the Magistrate Judge recommends finding that the claims of the amended petition do not escape the bar of the statute of limitations by relating back to the original, timely-filed claim.  As recently stated by the Supreme Court in *Mayle v. Felix*,[57] an amendment to a habeas petition does not relate back to the original petition for purposes of the statute of limitations "when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth."[58]

Here, Moore's third and fourth claims – concerning the overruling of a request to impeach a witness with prior inconsistent statements and denying the right to challenge as impermissible hearsay the use of a police report – arise out of completely different facts from his original two claims that rest on the denial of his right to proceed *pro se.*

---

[54] *Fielder*, 379 F.3d at 122.

[55] *Abela v. Martin,* 348 F.3d 164 (6th Cir. 2003).

[56] *Cowherd v. Million*, 380 F.3d 909, 914 (6th Cir. 2004), overruling *Austin v. Mitchell*, 200 F.3d 391 (6th Cir. 1999), quoting *Tillema v. Long*, 253 F.3d 494, 500 n.7 (9th Cir. 2001) ("[A] claim that a death row inmate is incompetent to be executed does not challenge the validity of the judgment, but only its execution." Holding that federal habeas statute of limitation applicable to the judgment is not tolled by a state collateral attack in terms of sentence.).

[57] *Mayle v. Felix*, __ U.S. __, 125 S. Ct. 2562 (2005).

[58] *Id*. at 2566.

-14-

By any analysis, the Magistrate Judge recommends that Moore's third and fourth grounds for relief be dismissed as time-barred.[59]

## B.     Ground one – deprivation of the right to self-representation

### 1.     *Claim and response*

Moore asserts that the trial court, acting contrary to his Sixth and Fourteenth Amendment rights of self-representation, "failed to make the appropriate inquiry into Petitioner Moore's request to represent himself, which resulted in insurmountable prejudice to Petitioner Moore."[60]

The state responds by contending that the trial court acted in accordance with the holding of *McKaskle v. Wiggins*[61] and that in so doing the state appeals court reasonably applied the clearly established federal law to this case.[62]

### 2.     *General principles of habeas analysis*

Under the well-known rule of *Williams v. Taylor*,[63] a habeas petitioner is entitled to relief only if a state court acted in a manner that was either contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme

---

[59] Moore has not argued that he is entitled to equitable tolling and, in any event, he does not appear to be eligible for such relief here. *See*, *Dunlap v. United States*, 250 F.3d 1001 (6th Cir. 2001).

[60] ECF # 1, Ex. 2 at 5-6.

[61] *McKaskle v. Wiggins*, 465 U.S. 168 (1984).

[62] ECF # 16 at 9-10.

[63] *Williams v. Taylor,* 529 U.S. 362 (2000).

Court of the United States.[64]  Where the state panel recognized the correct applicable  federal law, inquiry by the habeas court proceeds under the rubric of whether the state court unreasonably applied the federal law.[65]  The proper habeas inquiry in such a case is whether the state finding was "objectively unreasonable" and not simply erroneous or incorrect.[66]

Where the state court did not identify any clearly established federal law in rendering its decision,  the habeas court will first identify the clearly established federal law applicable to the matter and then determine if the state decision was contrary to that law by either contradicting the holding in a Supreme Court case or arriving at a substantially different result on materially indistinguishable facts.[67]

## 3.    *Self representation – the clearly established federal law*

As the Sixth Circuit recently observed in *Jones v. Jamrog*,[68] "the universe of clearly established federal law [concerning self-representation] as determined by the Supreme Court, 28 U.S.C. § 2254(d)(1), is narrow.  It consists of one decision, *Faretta v. California*,[69] the leading  Supreme  Court  decision  to  reach  a  holding  on  the  Sixth  Amendment  right  of

---

[64] *Id*. at 404.

[65] *Id.* at 407.

[66] *Id.* at 409-11.

[67] *Id.* at 405-06.

[68] *Jones v. Jamrog*, 414 F.3d 585 (6th Cir. 2005).

[69] *Faretta v. California*, 422 U.S. 806 (1975).

-16-

self-representation at trial."[70]  *Faretta* holds, *inter alia*, that the choice to represent oneself is:

> at once a choice to exercise an independent Sixth Amendment right, the right to represent oneself, and a choice to forgo another Sixth Amendment right, the right to counsel, and therefore is, in part, a waiver, and must be made knowingly, intelligently, and voluntarily.[71]

Hence, the right to proceed *pro se* and the right to be represented by counsel are viewed as correlative rights in that the assertion of the former necessarily constitutes waiver of the latter.[72]  For that reason, courts have prescribed that the trial court conduct an inquiry of a criminal defendant seeking to proceed *pro se* as to whether he is aware of the consequences of waiving his right to counsel[73] and, further, mandated that the trial judge make a finding on the record that the defendant has knowingly waived his right to counsel.[74] Because the right to counsel is so fundamental, a habeas court will "indulge every reasonable presumption against" finding a waiver of the right to counsel.[75]

However, such an inquiry and findings on the record by the trial court are only required where a criminal defendant has clearly, unequivocally, and timely asserted his right

---

[70] *Jones*, 414 F.3d at 591.

[71] *Faretta*, 422 U.S. at 835.

[72] *United States v. Cromer*, 389 F.3d 662, 680 (6th Cir. 2004).

[73] *Faretta*, 422 U.S. at 835; *Cromer*, 389 F.3d at 682.

[74] *See*, *United States v. McBride*, 362 F.3d 360, 366 (6th Cir. 2004).

[75] *Fowler v. Collins*, 253 F.3d 244, 249 (6th Cir. 2001).

to proceed *pro se*.[76]  Mere expressions of dissatisfaction with counsel will not be interpreted

as a request to proceed *pro se*,[77] and trial courts have no obligation to notify defendants of

the right to proceed *pro se*.[78]

In addition, once a *pro se* criminal defendant has invited or agreed to any substantial

representation by counsel, the presumption is that such representation by counsel is with the

defendant's consent.[79]

**4.      *The state appeals court decision***

The appeals court here denied the self-representation claim with the following

analysis:

> Although defendant told the court in his letter that he wished to proceed
> *pro se*, he then took the stand and allowed his counsel to conduct direct
> examination of him.  Thus, although he requested permission to proceed *pro se*
> in his letter to the court, he immediately contradicted his request by having his
> attorney continue to defend him.  This "subsequent appearance[] by counsel
> must be presumed to be defendant's acquiescence ***.[80]

---

[76] *Cromer*, 389 F.3d at 682-83 (requiring an "articulate and unmistakable demand to proceed *pro se*" before mandating the *Faretta* inquiry); *United States v. Martin*, 25 F.3d 293, 295-96 (6th Cir. 1994), ("Even where the right to self-representation is clearly invoked, it must be done so in a timely manner. *** [Denial of motion to proceed *pro se*] made after the trial was in full swing, is *a fortiori* a proper exercise of discretion.").

[77] *Martin*, 25 F.3d at 296.  ("Where a defendant merely expresses dissatisfaction with trial counsel's performance, as did Martin, we will not interpret this as a motion to proceed pro se; instead it will be understood as an appeal to the trial court's discretion to substitute counsel.")

[78] *Id.*

[79] *Wiggins*, 465 U.S. at 183.

[80] *Moore*, 2002 WL 664104, at *5, quoting *Wiggins*, 465 U.S. at 183.

The state appeals court, therefore, did not analyze whether the trial court properly handled Moore's request to represent himself under the clearly established federal law announced in *Faretta*.[81]  Rather, it focused on whether Moore waived his right to self-representation under *Wiggins*.[82]

**5.  *Application of the clearly established federal law***

*a.  Outline of analysis*

The conclusion of the state appeals court that the trial judge conducted an adequate review of Moore's request to represent himself and then that Moore waived that right to self-representation presents two structural barriers to meaningful review.  First, the court did not identify each step of the process by which the right to self-representation may be asserted, claimed and waived.  Next, it failed to make separate findings as to how those steps were specifically accomplished in Moore's case.  Consequently, it is necessary here to first delineate the sequence by which the right to self-representation is claimed and waived and, then applying that law to the facts in this record, to determine if the ultimate holding of the state appeals court was an unreasonable application of the law.

Essentially, three distinct steps are required to reach the ultimate holding of the state court.  First, Moore must be found to have made a clear, unambiguous and timely assertion of his right to self-representation.  Second, Moore's assertion must have been examined by the trial court and a conclusion reached, discernable from the record, that such a request was

---

[81] *Faretta*, 422 U.S. 806.

[82] *Wiggins*, 465 U.S. 168.

a knowing and voluntary waiver of the related right to be represented by counsel, and that Moore was authorized to proceed *pro se*.  This step is in two parts: the first being the waiver and the second being granting the motion for self-representation when the request is made. Finally, any subsequent waiver by Moore of his right to self-representation must  also be knowing and voluntary as reflected by the record.

Accordingly, these steps, and the factual support for concluding that they were or weren't followed here, will be addressed individually.

b.      *Step one – the clear, unambiguous, and timely assertion of the right to self-representation*

As noted, the right to self-representation must be asserted in a clear, unambiguous, and timely manner.[83] Mere expressions of dissatisfaction with counsel will not be interpreted as a request for self-representation but will be seen as an appeal to the trial court's discretion to substitute counsel.[84] Nor is an assertion of the right to self-representation made after a trial has commenced beyond the authority of the trial court to accept or deny at its discretion.[85]

Thus, it is the clear assertion of the right to self-representation that triggers the requirement that the trial court conduct the *Faretta* inquiries to establish that a litigant wishing to proceed *pro se* is thereby knowingly and voluntarily waiving his right to

---

[83] *See*, cases cited at n.76, supra.

[84] *Martin*, 25 F.3d at 295-96.

[85] *Id.*

representation by counsel.[86] It is further the clear unambiguous assertion of such right during a trial that places the matter within the sound discretion of the trial court.[87]

Although it did not specifically find that Moore made a clear, unambiguous, and timely request for self-representation, the state appeals court did find that Moore "told the court in his letter that he wished to proceed *pro* se."[88] While that statement is a mixed conclusion of law and fact and so not binding on a federal habeas court,[89] the Magistrate Judge recommends finding that Moore's letter did constitute a clear and unambiguous request for self-representation.

The letter, which is reproduced in full in the state appeals court opinion,[90] was written by Moore at the specific request of the trial judge.[91] The judge, at the conclusion of an on the record colloquy with Moore about his complaints concerning his trial counsel, had told Moore he would "entertain the thought" of Moore representing himself,[92] instructing him to make the request for self-representation as "a written motion if you want to do so over this

---

[86] *Cromer*, 389 F.3d at 682-83.

[87] *Martin*, 25 F.3d at 296 (denial of a motion to proceed *pro se* "made after the trial is in full swing, is *a fortiori* a proper exercise of discretion.").

[88] *Moore*, 2002 WL 664104, at *5.

[89] *Thompson v. Keohane*, 516 U.S. 99, 109-10 (1995).

[90] *Moore*, 2002 WL 664104, at *3.

[91] *Id.* (Notation following signature and date that it was "Written on direction of judge Honorable Timothy McGinty.")

[92] ECF # 20 at 1196.

lunch period and explain to me your plans for trial, your strategy and – not specific, but your general capacity for conducting a trial."[93]

In his letter, Moore methodically proceeds through a series of possible solutions to his difficulties with counsel, each new proposal contingent on the unavailability of the prior one. Moore begins by re-stating his basic complaint that he is "in a position to watch but not participate, to witness but not contribute...."[94]  As his first remedy, Moore proposes that he be permitted to "assist [defense counsel] Bob Tobick to the best of my abilities...."[95]  But, Moore goes on to state, "if my contributions will be continueously [sic] ignored then I would ask that you allow him to assist me in continueing [sic] my defense."[96]

Proceeding through his sequence of contingencies, Moore then states that "[i]f that cannot be accomplished, then I would ask that you recall past witnesses and they be asked Q's I deem relevant...."[97]  Finally, Moore concludes by stating:

> If none of the before mentioned requests can be granted[,] I ask that you read this entire document into the record and you allow me to proceed *pro se* after a reasonable continuance (48 hrs.)....[98]

Moore concluded his letter by apologizing to the court for "any inappropriate behavior in the courtroom" and requesting an opportunity to "apologize to [the] jury and [so that] they

---

[93] *Id.*

[94] *Moore*, 2002 WL 664104, at *3.

[95] *Id.*

[96] *Id.*

[97] *Id.*

[98] *Id.*

be made fully aware of why the earlier incident took place and the resolution [that was] decided upon and why."[99]

Although the trial judge professed to be confused as to whether this letter did represent a clear, unambiguous, and timely request by Moore for self-representation,[100] the state appeals court, as noted, did state that Moore "requested to proceed *pro se* in his letter to the court...."[101]  In addition, making the request for self-representation as the final contingency in a series of possibilities is not fatal to finding that it is clear and unambiguous.[102]

The Magistrate Judge accordingly recommends finding that this letter was a clear, unambiguous request by Moore to represent himself.  The conclusion by the state appeals court to this effect should, therefore, be seen to be not an unreasonable application of clearly established federal law.

Further, as to timeliness, the third initial attribute of a valid request for self-representation, the state appeals court observed that there is no requirement that a request to proceed *pro se* be made prior to the commencement of trial.[103]  This is fully in accord with

---

[99] *Id.*

[100] *Id.* at *4 (to defense counsel, "He wants to and he later says he would like to go *pro se*, but I'm not sure;" to Moore, "I read [your letter] after you got on the witness stand Mr. Moore, and you have asked a couple of things.  I'm not sure what you want....").

[101] *Id.* at *5.

[102] *See*, *Jones*, 414F.3d at 592-93.

[103] *Id.* at *4.

well-established federal law that permits the granting of a request for self-representation within the discretion of the trial judge.[104]

Accordingly, the Magistrate Judge recommends finding that the implicit conclusion of the state appeals court that Moore, by his letter to the trial judge, did make proper, conditionally timely request for self-representation, is not an unreasonable application of clearly established federal law.

In sum, the Magistrate Judge recommends finding that the state court did not unreasonably apply clearly established federal law in finding that Moore made a clear, unambiguous, and timely request for self-representation, contingent upon the exercise of the trial court's discretion.

c. *Step two – waiver of the right to counsel and acceptance by the trial court of the motion for self-representation made during trial*

The inquiry would now normally proceed to whether the state appeals court reasonably applied clearly established federal law in evaluating whether the trial court (a) properly recorded a knowing and voluntary waiver by Moore of his right to counsel and then (b) properly exercised its discretion in accepting or rejecting Moore's motion to represent himself made during the course of his trial.

However, because the trial court here conspicuously failed to take any action on Moore's motion, and because the state appeals court did not recognize the presence of the issue of what a trial court must do in addressing a request to proceed *pro se* made during trial, it must now be considered *de novo*, and the implicit conclusion of the state appellate court

---

[104] *Martin*, 25 F.3d at 296.

-24-

that this step was properly taken at trial be considered in light of whether it is contrary to clearly established federal law.

The state appeals court examined the trial court's actions after Moore tendered his letter requesting the right to self-representation in light of the rubric set forth in the Ohio case of *State v. Deal*.[105]  The appeals court criticized the trial court's "manner of handling [Moore's] request" as "less than effective," but ultimately concluded the trial judge had "technically complied with the requirements of *Deal*..."[106]

The Magistrate Judge notes that *Deal* is inapposite to the present matter.[107]  *Deal* prescribes what must be done when, during the course of a trial, "an indigent accused *questions the effectiveness and adequacy* of assigned counsel...."[108] As the Sixth Circuit in *Martin* makes clear, the mere act of questioning counsel's performance is not to be understood to be a request to proceed *pro se*, and so trigger the inquiries mandated by *Faretta*, but "will be understood by the trial court as an appeal to the court's discretion to substitute counsel."[109]

---

[105] *State v. Deal*, 17 Ohio St. 2d 17, 244 N.E.2d 742 (1969).

[106] *Moore*, 2002 WL 664104, at *5.

[107] It should be noted that on appeal Moore framed a related issue to the one asserting error for denying him his right to self-representation exactly as the state court did concerning the issue of self-representation, as one involving the failure of the trial court to make timely inquiry into his complaints about counsel, citing *Deal* and *State v. Prater*, 71 Ohio App. 3d 78, 593 N.E.2d 44 (1990).  *See*, ECF # 18 at 32. If the state appeals court mistakenly conflated these arguments, it would explain the inapposite use of *Deal* to this claim.

[108] *Id.* at *4, quoting the syllabus in *Deal* (emphasis added).

[109] *Martin*, 25 F.3d at 296.

Thus, by grounding its analysis on *Deal,* the state appeals court incorrectly found itself examining what steps must be taken by a trial court to safeguard the limited right of an indigent accused to have appointed counsel that one prefers[110] as against the more robust procedures *Faretta* mandates when dealing with the fundamental right to represent oneself.[111]

Therefore, the Magistrate Judge recommends finding that the state appeals court here did not correctly identify what was at stake when the trial judge undertook a review of Moore's request[112] and so did not subject the review of that request to the proper clearly established federal law.

The request to represent oneself inherently involves a waiver of the right to counsel. As has been previously noted:

> This choice is at once a choice to exercise an independent Sixth Amendment right, the right to represent oneself, and a choice to forgo another Sixth

---

[110] *See, e.g.*, *United States v. Saldivar-Trujillo*, 380 F.3d 274, 277 (6th Cir. 2004) ("An indigent defendant has no right to have a particular attorney represent him and therefore must demonstrate 'good cause' to warrant substitution of counsel.").

[111] *Faretta*, 422 U.S. at 834. ("It is the defendant, therefore, who must be free personally to decide whether in his particular case counsel is to his advantage. And although he may conduct his own defense ultimately to his own detriment, his choice must be honored out of 'that respect for the individual which is the lifeblood of the law.'") (Quoting *Illinois v. Allen*, 397 U.S. 337, 350-51 (1970) (Brennan, J., concurring).)

[112] The state appeals court did, as noted, correctly find that Moore had requested self-representation, but then, apparently, mistakenly concluded that a request for self-representation was equivalent to a request to substitute counsel, requiring only a response from the trial court suitable to a request to change appointed counsel. *See*, *Moore*, 2002 WL 664104, at *6 ("Although we override this assignment of error, the trial courts are advised to seriously and properly address defendants' requests to change counsel or proceed *pro se*.").

Amendment right, the right to counsel.  The choice, therefore, is in part a waiver and thus must be made knowingly, intelligently, and voluntarily.[113]

Thus, once the request for self-representation has been made clearly and unequivocally, the next step is to determine if the party requesting self-representation is thereby "knowingly, intelligently and voluntarily" waiving his right to counsel.

In *King v. Bobby*,[114] the Sixth Circuit recently held that while an extensive pre-waiver colloquy consisting of a series of specific questions from the court to the party wishing to proceed *pro se* is "required by this Circuit it is not required by the Supreme Court."[115] Instead, *King* held that the core holding of the Supreme Court is that a person wishing to represent himself must do so by "a knowing and intelligent waiver," and the presence of that waiver may be found by examining the whole record.[116]

Here, despite serious flaws in the trial court's colloquies with Moore on the issue of self-representation, including misstatements of key points of law,[117] there are arguably present in the whole record the elements of a knowing and intelligent waiver by Moore of

---

[113] *Jones*, 414 F.3d at 592, quoting *Faretta*, 422 U.S. at 835.

[114] *King v. Bobby*, 433 F.3d 483 (6th Cir. 2006).

[115] *Id.* at 492.

[116] *Id.*

[117] *See, e.g.*, "It's too late for [self-representation] now.  You've already started with an attorney.  I don't believe you can go mid-trial."  ECF # 20 at 1195-96.  *See also*, "[If you were to proceed *pro se*] [y]ou would be waiving final argument because you would be incapable of presenting what a *pro se* final argument would have to be."  *Id.* at 1196-97.

the right to counsel,[118] despite the fact that the state appeals court made no finding in this regard.  However, in view of the fact that the trial court completely failed to rule on Moore's motion to represent himself made during trial and, thus, committed to the court's discretion, the Magistrate Judge recommends that it be found unnecessary to address the question of whether the necessary elements of a waiver of the right to counsel exist in the total record.

Specifically, the trial judge correctly recognized, despite his prior observation that he did not believe a request for self-representation could be made during trial, that any request for self-representation made during the trial would need to be in the form of a motion to the court and that exercising that right would be subject to the court's sound discretion.

Accordingly, the trial judge told Moore that he would "entertain the thought" of his representing himself.  Moore was told on the record, "[i]f you want to put it in writing over the lunch hour, I will ... allow you to make a written motion...."[119]

Moore did so, preparing a written request to represent himself, which he made a point to note was done at the request of the trial judge.[120]  Moore's attorney told the trial court at the conclusion of testimony for the day the letter was written that he would review the letter with Moore and ask that it be included in the record the next morning.[121]  The trial judge

---

[118] *See*, *e.g.*, Moore was aware of his right to counsel, ECF # 20 at 1194; and was aware of potential serious consequences of self-representation, although some of the noted consequences were erroneous, *id*. at 1194-97.

[119] *Id*. at 1196 (emphasis added).

[120] *Moore*, 2002 WL 664104, at *3.

[121] ECF # 20 at 1285-86.

agreed, stating that "we'll talk about it in the morning.  Before we start, remind me about it."[122]

Moore's counsel did as he was instructed and reminded the trial judge at the opening of court the next day that he still needed to rule on Moore's motion.[123]  The trial judge simply told Moore's attorney to "send [the letter] up when you find it.  That's all."[124]  At that point, without ruling on Moore's pending motion for self-representation, the trial judge resumed the trial with Moore taking the stand to be examined by his existing attorney in his own defense.

Shortly thereafter, during an on the record sidebar discussion on an evidentiary objection, the trial judge brought up the subject of Moore's letter.  The court expressed the belief to Moore's attorney that Moore was "vascillat[ing]" as to whether he wished to represent himself as he had expressed the previous day during the colloquy.[125]  The trial judge stated that, "He doesn't specifically ask to take over his own defense."[126]

Moore's attorney immediately sought to correct the court concerning Moore's intent to represent himself as expressed in the letter.[127]  "I think he does.  He wants to take over

---

[122] *Id.* at 1286.

[123] ECF # 21 at 1291.

[124] *Id.*

[125] *Id.* at 1305.

[126] *Id.* at 1306.

[127] *Id.*

from that point." [128] Critically, the trial judge then raised the point that Moore's taking the stand that morning could be an abandonment of any previously expressed wish to proceed *pro se*. "[H]e got up on the witness stand so I don't know if that's an abandonment of what he just gave me before hand or what."[129]  This comment is despite the fact that Moore had not received any ruling on his motion when he took the stand.  The trial judge concluded his remarks by stating that he would delay a ruling on Moore's request for self-representation yet again.  "We will inquire of him later on again to see where he is at."[130]

The trial then resumed, with Moore continuing to answer questions posed by his attorney.  During a break, the trial judge did address Moore on the record outside of the presence of the jury about his letter:

> Now, the court received your letter here this morning.  *I read it after you got on the witness stand*, Mr. Moore, and you have asked a couple of things.  I'm not quite sure what you want, but you wanted a chance to address the jury.  The court would certainly give you that.  You had the chance.  Your attorney asked if there is anything you wanted to say.  **You gave your statement.  That is what you are looking for**.[131]

These remarks by the trial court establish that Moore's written motion for self-representation, prepared at the explicit direction of the trial judge, was not even considered prior to trial resuming with Moore assuming the witness stand.  Moreover, the trial court here once again expressed confusion over the import of Moore's motion – which,

---

[128] *Id.*

[129] *Id.*

[130] *Id.* at 1307.

[131] *Id.* at 1375 (emphasis added).

it should be recalled the state appeals court in review found was a clear, unambiguous request for self-representation – and reduced Moore's letter to simply a request to make a statement to the jury, something which Moore had already done.[132]  After misconstruing the motion, the trial court told Moore, "You gave your statement.  That is what you are looking for."[133]

While appearing here to dispose of the misconstrued motion as moot, the trial court did not clearly indicate to Moore that his written motion to represent himself was denied.

The court then had a brief discussion with counsel and Moore as to whether Moore would apologize to the jury in the form of a statement or as the answer to a question.[134]  The court stated it was indifferent to what was decided in this respect.[135]  Moore's counsel then began to speak, but was interrupted by the trial judge finishing his remarks about the form of Moore's apology to the jury.  "So you talk it over and whatever you want to do [regarding the form of the apology], that's fine.  Okay.  Have a nice break here."[136]

In the end, Moore's written motion, which was discussed by the trial court at this conference only to the limited degree that it expressed a desire to apologize, was never discussed again on the record.  No ruling on Moore's written motion to represent himself was ever put on the record.

---

[132] *Id.*

[133] *Id.*

[134] *Id.*

[135] *Id.* at 1375-76.

[136] *Id.* at 1376-77.

While, to be sure, neither Moore nor his counsel were continuously insisting that the trial judge rule on Moore's written motion for self-representation, Moore's attorney did attempt to correct the trial court when it sought to mis-characterize the motion as confusing or contradictory.[137]  Moore, in turn, who had been warned by the trial judge about his "[un]willingness to comply with orders of the court,"[138] even to the point of chiding him for his lack of "basic politeness,"[139] may reasonably be assumed to have been being careful not to anger the judge any further by seeking to remind him to rule on his pending motion.  Most importantly, in the end, the record shows that it was the trial court that displayed a troubling tendency to repeatedly mis-read the motion and to then routinely put off any consideration of it.

The Magistrate Judge suggests that this failure to afford Moore any meaningful consideration of his clear, unambiguous, and potentially timely request to exercise his fundamental constitutional right to self-representation – a request Moore could not exercise on his own because doing so was within the discretion of the trial court since it was made during the trial – precludes recommending that the appeals court reasonably applied *Faretta* here by concluding that the trial court "technically complied" with *Dean*.

---

[137] *See*, *id.* at 1306.

[138] *Id.* at 1196.

[139] *Id.*

d.      *Step three – because Moore's right to self-representation had not attached, since it was asserted during trial and thus dependent for its execution on the discretion of the trial court, which had not ruled to either grant or deny Moore's request, Moore cannot be said to have waived something he did not have.*

Since exercising a right to self-representation asserted during trial depends upon the approval of the trial court in its discretion, a finding that such a right was subsequently waived depends upon it having been previously effectuated. Thus, any waiver in this case would depend upon Moore having been first granted the right to represent himself by the trial court, and then, "knowingly, intelligently and voluntarily,"[140] having done or said something to waive that right.

A pre-condition to a waiver being "knowing, intelligent and voluntary" must be that the actor is aware of the what is being waived. This central point appears to lie behind the inquiries mandated by *Faretta*. Therefore, if the right to defend *pro se* and the right to counsel are "two faces of the same coin,"[141] and if the inquiries mandated by the Sixth Circuit in applying *Faretta*[142] begin with inquiries focused on making clear that the party seeking to relinquish the right to counsel does presently have that right, then establishing from the record that a party allegedly waiving his right to self-representation actually knew that he was in possession of that right at the time of the purported waiver seems to be required.

---

[140] *See*, *Jones*, 414 F.3d at 592. A choice that includes a waiver "must be made knowingly, intelligently and voluntarily" (quoting *Faretta*, 422 U.S. at 835).

[141] *Cromer*, 389 F.3d at 680 (quoting *United States v. Conder*, 423 F.2d 904, 908 (6th Cir. 1970)).

[142] *Id.* citing to *1 Bench Book for United States District Judges* 1.02-2 to -5 (3d ed. 1986).

Further, being able to locate in the record some evidence that the party allegedly waiving the right to self-representation knew he currently had that right would protect against an inadvertent waiver.[143]

*McKaskle v. Wiggins*,[144] the case cited by the state appeals court and here by the state in support of the proposition that Moore waived his right to proceed *pro se* when he took the stand and permitted his counsel to examine him, is not contrary to the position being suggested here.

Wiggins requested the right to proceed *pro se* before his second trial, after he had done so with the court's permission during the first trial.[145]  As the Supreme Court noted, Wiggins filed and argued twelve pretrial motions pro se; conducted the voir dire pro se; filed numerous trial motions pro se; cross-examined witnesses and raised objections pro se; filed his own requests for jury instructions; and, made his own objections to the proposed jury charge.[146]

Thus, when Wiggins relinquished control of the trial to standby counsel, the Supreme Court did not need to seek further evidence that Wiggins had – and knew he had – possession

---

[143] *See*, *id.*, citing *Adams v. Carroll*, 875 F.2d 1441, 1444 (9th Cir. 1989) which discussed the analogous situation of a locating an unequivocal assertion of the right to self-representation and thus a clear waiver of the right to counsel as a protection against finding an inadvertent waiver from defendant's "occasional musings on the benefits of self-representation."

[144] *Wiggins*, 465 U.S. 168.

[145] *Id.* at 170-71.

[146] *Id.* at 175.

of his right to self-representation at the time he took the actions that the Court found constituted a waiver of that right.

There is plainly no such record here.  The conclusion of the state appeals court that Moore, by permitting his counsel to examine him, thereby waived his right to self-representation does not, in the view of the Magistrate Judge, have an adequate foundation in the record.  Moore, when he took the stand, did not know he possessed the right he was seeking.  In fact, he knew only that he had asked for that right and that the trial court was reviewing his request.

Further, characterizing Moore's action here as a waiver becomes even more difficult when it is recalled that the trial judge admitted that Moore took the stand prior to the judge even reading Moore's request, let alone ruling on it.  Requiring Moore to have refused to take the stand until his request for self-representation was ruled on would have put Moore in the position of potentially provoking the trial judge who had just recently scolded him for his inability to follow the court's orders.  Moreover, Moore's attorney had been told by the trial judge immediately prior to Moore's testimony to "send up" Moore's motion to the bench where, presumably, the court would read it and rule on it.  There was no hint that testifying would be prejudicial to the motion, let alone be construed as a waiver.  That notion from the trial judge only surfaces after Moore has already commenced testifying.

Accordingly, the Magistrate Judge recommends finding that Moore's testimony after he sought the right to self-representation – but before that motion had been ruled on, or even considered – did not constitute a "knowing, intelligent and voluntary waiver" of that right,

and so further recommends that the conclusion of the state appeals court to the contrary be deemed to be an unreasonable application of the clearly established federal law of *Wiggins*.

## C.    Ground two – deprivation of the right to effective assistance of counsel

Moore asserts that he was denied the effective assistance of counsel when the state trial court failed to make an adequate and timely inquiry into Moore's complaints concerning his appointed counsel.[147]   The state responds by asserting that Moore has not presented specific errors that he claims were committed by counsel[148] and that the state appeals court reasonably applied *Strickland v. Washington*[149] in concluding that Moore did not establish a "reasonable probability that a different [trial] strategy would have achieved a contrary result."[150]

The state appeals court did not treat the issue as a matter involving a claim of ineffective assistance of counsel, to be resolved according to the analysis established in *Strickland*, but as a question of when a duty attaches to a trial judge to inquire of an indigent defendant concerning his claims concerning the "adequacy and effectiveness of assigned counsel."[151]

---

[147] ECF # 1, Ex. 2 at 13-18.

[148] ECF # 16 at 10 ("Moore contends that he was deprived of the effective assistance of counsel as a consequence of errors which Moore deems unworthy of identification."); ("Moore brands counsel as ineffective for reasons that 'would have been discovered' had the trial judge conducted a 'proper' inquiry."), *id.* at 12.

[149] *Strickland v. Washington*, 466 U.S. 668 (1984).

[150] ECF # 16 at 13.

[151] *Moore*, 2002 WL 664104, at *4, quoting *Deal*, 17 Ohio St. 2d 17.

Moore presented this issue to the state appeals court as solely involving the failure of the trial court to make an adequate and timely inquiry of his complaints, mostly relying on the Ohio state decisions of *Deal* and *State v. Prater*.[152]

Essentially, the first issue before the habeas court is to determine specifically what constitutional violation Moore is alleging in this ground for relief.  It appears from both his current petition and his argument to the state court that the gravamen of this ground for relief is the failure of the trial court to inquire into his complaint and not any specifically deficient actions by his attorney which might be reviewed by a *Strickland* analysis.

An indigent defendant complaining about appointed counsel intersects with the Sixth Amendment in two possible ways.  First, as discussed previously, it may involve a defendant's right to waive his right to counsel and represent himself.[153]  Second, it may involve a request for the appointment of new counsel[154] or the substitution of retained counsel.[155]  Accordingly, the constitutional right involved, which would require a timely hearing by the trial judge, would be the right to self-representation, which has already been addressed, or the right to change counsel.

As to the situation of a defendant seeking to waive his right to counsel and represent himself, that has been previously addressed.  As to the situation where a defendant seeks to

---

[152] *Prater*, 71 Ohio App. 3d 78, 593 N.E.2d 44, cited in ECF # 18 at 32 (Moore's brief on appeal).  Moore also cited the state court, *inter alia*, to *Sawicki v. Johnson*, 475 F.2d 183 (6th Cir. 1973) and two other federal court opinions.

[153] *See*, *Faretta*, 422 U.S. 806.

[154] *See*, *Saldivar-Trujillo*, 380 F.3d at 277.

[155] *Serra v. Michigan Dep't of Corrs.*, 4 F.3d 1351 (6th Cir. 1993).

change counsel, either by substituting a new appointed counsel or by replacing the appointed counsel with retained counsel, it should be noted that neither situation obtains here.  Moore has not argued here or to the state court that he wished to substitute a new appointed counsel or to retain his own counsel.

Rather, Moore has consistently argued that he was impermissibly denied his right to represent himself.  By this second ground for relief, Moore attempts to create a second, independent constitutional claim of "failure to inquire into complaints concerning counsel" out of the fundamental facts of his first ground for relief.  Again, the right to a timely and adequate hearing concerning a defendant's complaints about counsel is not an independent right, but is part of the process by which a court determines if such complaints reveal an adequate foundation for one of the only two actions a court is empowered to take: either permitting the defendant to elect his right to self-representation or to permit existing counsel to withdraw and new counsel to assume representation.

Moore's attempt here to conflate the requirement for a hearing in such circumstances with the *Strickland* analysis appropriate to reviewing specific allegations of deficient performance does not create a new constitutional right to a timely hearing during the course of trial by which a trial court can instruct existing counsel on new strategy or tactics more to the liking of the defendant.  If a defendant believes his counsel is deficient and brings that to the court's attention during trial, the result must either be the waiver of the right to counsel and assertion of the right of self-representation or the substitution of new counsel.

Moore did clearly indicate to the trial court which option he sought.  That claim was analyzed above and the present argument, as it restates the first, is moot.

Accordingly, the Magistrate Judge recommends that ground two of Moore's petition be dismissed as moot.

## Conclusion

For the foregoing reasons, the Magistrate Judge recommends that Moore be granted a conditional writ, subject to being re-tried by the state.


Dated:   July 27, 2006                        s/ William H. Baughman, Jr.
                                              United States Magistrate Judge


## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.[156]

---

[156] *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).