IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

------------------------------------------------------ :
:
JOHN C. MOORE, JR. :
: CASE NO. 1:04 CV 0242
Petitioner, :
:
-vs- : <u>ORDER AND OPINION ADOPTING</u>
: <u>REPORT AND RECOMMENDATION</u>
JAMES HAVILAND, Warden, : <u>AND GRANTING A CONDITIONAL</u>
: <u>WRIT OF HABEAS CORPUS</u>
Respondent. :
:
------------------------------------------------------

UNITED STATES DISTRICT JUDGE LESLEY WELLS

On 11 February 2004, petitioner John C. Moore, Jr. filed with this Court a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  (Docket No. 1).  Mr. Moore's habeas petition was referred to United States Magistrate Judge William H. Baughman for a Report and Recommendation ("R&R").  (Docket No. 7).  The R&R recommends that this Court grant a conditional writ of habeas corpus on the grounds that the state trial and appellate courts acted contrary to Mr. Moore's Sixth and Fourteenth Amendment rights of self-representation.  (Docket No. 32).  The respondent filed objections to this recommendation, urging this Court to deny Mr. Moore's petition (Docket No. 34), and the petitioner responded in support of the Magistrate Judge's recommendations (Docket No. 35).

For the reasons set forth below, the court will adopt Magistrate Judge Baughman's R&R and grant a conditional writ of habeas corpus, subject to Mr. Moore being re-tried by the state.

# I.  BACKGROUND

In September 2000, petitioner John Moore was tried in the Cuyahoga County Common Pleas Court for crimes stemming from a robbery at the Hard Rock Cafe in Cleveland, Ohio.  State v. Moore, 2002 WL 664104 at *1 (Ohio App. 8 Dist. April 18, 2002).  The State of Ohio presented evidence to prove that Mr. Moore and an accomplice arrived at the restaurant early on a Sunday morning, held a gun to the kitchen manager's head and demanded money, and then tied up the kitchen manager and another employee with duct tape before leaving.  Id.

The Eighth District Court of Appeals related the following relevant discussions which took place on the third and fourth day of Mr. Moore's trial:

> On September 14, after several days of trial, immediately following a break in which the attorney was instructed to discuss whether or not a certain witness should be called, defense counsel approached the bench and stated,
>
>> my client has given me a request of instructions and I have informed him that this is not the appropriate time to place this on the record. And I'm telling the court that I would like time after the State's case and before our case, but he has some things which I think they are perhaps dissatisfaction with the way I'm representing him that he would like to tell the court or have me tell the court.
>
> THE COURT: Well, that's all very nice. You know, we will certainly take that all into account. Thank you. Let's go.
>
> The court then tried to proceed with trial, but defendant repeatedly interrupted. He stated, "I asked [my attorney] to deliver a letter. I don't think he gave it to you." The court informed him that it was not the appropriate time for this discussion, to which defendant replied, "Excuse me, your Honor, before we start up, I want to make sure I preserve-." The court interrupted him and told him not to speak in front of the jury. The court then said "When we are at a break, we will have another-." Defendant then interrupted the court and said, "we were at a break. He handed you a note."

Following [a] discussion of the events of a trial of a co-defendant, the court informed defendant that he could say whatever he wanted when he testified. Defendant attempted to clarify that "[t]hese are questions for witnesses that were already here." The court told him to be quiet and that he could say anything he wanted to on the witness stand.

Defendant responded, "I'm trying to communicate with the court but nobody is letting me." The court again ordered him to stop speaking until the jury was no longer in the room.

Later that day, the court spoke on the record with the defendant outside the presence of the jury. Defendant again explained that his attorney was not asking questions he considered necessary for his defense and that he had written a note to the judge informing him of it. The judge acknowledged that he had not seen defendant's note and told defendant that although he could suggest questions to his counsel, counsel "is the one who makes that decision as to the specifics of the questions and witnesses."

Defendant asked, "then what do I have to do to make a decision on what questions are asked and who's called and not called? What do I have to do right now to do that because I feel that I have some very important questions that are not being asked." The court responded by telling him first that his court-appointed counsel was very qualified and "is highly respected in the community."

The court went on to tell him, "[n]ow you could have hired your own attorney or you can go pro se and be your own attorney * * *." He then discouraged defendant from going pro se, stating that he had never seen anyone succeed pro se. Nevertheless, defendant then asked repeatedly to go pro se.[1]

---

[1] This part of the colloquy in its entirety is recorded as follows in the trial transcript:

The Court: Now, you could have hired your own attorney or you can go pro se and be your own attorney, which is of course, a very dubious action for anybody to take, and I personally, in 28 years as an officer of the court, have never seen anybody successful in that regard. In fact, I don't even know of a case in Cuyahoga County where someone has been successful at a trial acting as their own attorney pro se. But you always have that option.

The Defendant: So you are saying that's the only way that I can get all my questions –

The Court: The dream team is occupied here. We can –

3

The court first told him "[i]t is too late for that now. You have already

| | |
|---|---|
| The Defendant: | Can I go pro se? |
| The Court: | – get Johnnie Cochran or F. Lee Bailey. |
| The Defendant: | Can I go pro se then? |
| The Court: | You want to go at this point – |
| The Defendant: | You are leaving me with no other option. You are saying that the only way – |
| The Court: | It is too late for that now. You have already started with an attorney. I don't believe you can go mid trial. |
| The Defendant: | That's what I'm asking. I asked you what do I have to do. |
| The Court: | I don't think you're in a position to discharge your attorney. You haven't demonstrated any knowledge of the law or willingness to comply with the orders of the court or understanding of the rules of evidence. |
| The Defendant: | I've tried to get – |
| The Court: | And basic politeness. I will entertain that thought. If you want to put it in writing over the lunch hour, I will instruct the deputies to allow you to have your paper and pencil or pen and allow you to make a written motion if you want to do so over this lunch period and explain to me your plans for trial, your strategy and – not specific, but your general capability of conducting a trial. I don't see any right now. You would not be in a position to conduct the final argument. |
| The Defendant: | Can I ask you a question? |
| The Court: | You would be waiving final argument because you would be incapable of presenting what a pro se final argument would have to be. It would be, you know, a very dubious action. Again, I have never seen it happen. It's theoretically possible it could happen where it could be successful. It's theoretically possible that you could. It's possible that you can be hit by a meteor. |
| The Defendant: | A what? |
| The Court: | A meteor, right? Things that come from space and they invade the earth's atmosphere and they hit the earth on a day-by-day basis. I'm told. I have never seen one though. Not striking anyhow. |

(Docket No. 20, Tr. 842-845).

started with an attorney. I don't believe you can go mid trial." [ ]  The court also stated that defendant had not "demonstrated any knowledge of the law or willingness to comply with the orders of the court or understanding of the rules of evidence." [ ] At that point defendant gave the brief note to the judge stating his complaints about his attorney.[FN1]

> [FN1.] The note states, "Your Honor, John Moore would like to go on record to preserve right to call back any or all witnesses called by Prosecutor. I have many, many Q's that I presented to my lawyer to ask but did not. I also want Fred King and all co-defendants called if prosecutor doesn't. I also ask that Det. Moran be kept out of court since he'll be called as a witness."

The court then changed its position and told defendant to write and submit his request during the lunch break, including "your plans for trial, your strategy, * * * your general capability of conducting a trial" and stated it would review the request. Defendant reiterated that all he wanted was "a right to call them witnesses." [ ]

After the lunch break, defense counsel told the court that defendant had given him the "written statement. With the court's permission I will review it with him and we can attach it to the record tomorrow morning." The court instructed counsel to remind it about the letter before trial began in the morning. The court then proceeded with the cross-examination of one of the detectives.

The next morning counsel informed the court that he had the letter the court had instructed defendant to write. The court responded, "Well, I have the first letter he sent. Is there another letter?" The court was informed that the letter in discussion was the one he instructed defendant to write during the previous day's lunch break. The court responded, "[w]ell, send it up when you find it.  That's all. * * * " The court accepted the letter and then ordered the jury into the room.[2]  The defense then began its case, calling

---

[2] The letter from defendant stated:
* * *
Your Honor,

 I feel that a lot of my Q's would have promoted facts to my defense of being coerced into making a false confession/statement. A lot of relevant information which could contrast with the states ( sic ) position are not being brought out due to the Q's not being asked or line of Qing not being followed through to the end.

 I believe by asking former witnesses, the fact that a lot of information can be brought to light thru asking the revelavant [ sic ] Q. Q's to ascertain state of mind of

5

the defendant as a witness.

Later that day while at a side bar, the court stated "while we're at the side bar, we have-whatever you think is necessary in the defense. I have a letter from him in which he vacillates [ sic ] the letter given to me a minute ago." The court then states that defendant "doesn't specifically ask to take over his own defense." Defense attorney contradicts the court saying he thinks that the defendant does want to take over his own defense. The court responds, "He wants to and he later says he would like to go pro se, but I'm not sure. He wants to go as cocounsel [ sic ] apparently, but, he

---

witnesses, intent of witness's and the igsistance [ sic ] of a concerted effort on the police behalf to hid [ sic ] facts and distort truth's [ sic ]. I have given numerous lead's [ sic ] for Mr. Tobik to follow-up on but none were done in a timely fashion to be used in my defense.

     As for closing Arguements [ sic ] if you will give me the perameters [ sic ] [boundries] by which I have to limit my resessatations [ sic ] & statements of fact I'm sure with a reasonable amount of time (48 hrs.) I could write a full assessment of my strategy as well as the means to deliver it to the jury. In closing I have tried to comply with all orders of the court and only wish to get both the truth (in full) and my version of events related to the jury before deliberations commence. I feel that I am in a position to watch but not participate, to witness but not contribute even though I have firsthand knowledge ofentime [ sic ] procedings [ sic ]. I'm if I may put it in example. [ sic ] Being expected to fight a championship boxer in a title fight with my left hand tied & my right broken. I could still fight but the chances of success is [ sic ] zero to none.

     I would like to assist Bob Tobik to the best of my abilities and on important matters of strategy & fact toward witnesses & evidence. But if my contributions will be continueously [ sic ] ignored then I would ask that you allow him to assist me in continueing [ sic ] my defense. If that can not be accomplished, I ask that you recall past witnesses and they be asked Q's I deem relevant and future witnesses & evidence be reviewed to help better form defense. If none of the before mentioned requests can be granted I ask that you read this entire document into the record and you allow me to proceed pro-se [ sic ] after a reasonable continuance (48 hrs) for sole purpose of reviewing documents in Prosecutor's control and to formulate a full encompassing strategy & to write both closing arguement [ sic ] and formulate Q's to be asked to me when I take [the] witness stand in my defense. This time will also be used to familiarize myself with the rules, protocols, and procedures of trial. My final request is that this document not be scrutinized by prosecution until such time as I am prepared to act in my own defense. I apologize for any inappropriate behavior in the courtroom and will continue to conduct myself in a respectful manner for the duration of trial.

Thank you
John C. Moore
Sept. 14, 2000 1:00 p.m.
Thursday Written on direction of judge Honorable Timothy McGinty.
* * *

6

> got up on the witness stand so I don't know if that's an abandonment of what he just gave me beforehand or what.
>
> Anyway, we will discuss it with him. We told him in the last trial, and I told him in this trial he is allowed-I will give him a chance to make a speech at the end of your examination. If he wants to make a statement outside of what he said, he can * * *."
>
> Finally, the court said, "[w]e will inquire of him later on again to see where he is at. I can't make heads or tails from that letter, the combination of the letter and his actions getting up on the witness stand."
>
> During another break in defendant's testimony, the court addressed the defendant on the record while the jury was out of the room. The court said:
>
>> Now, the court received your letter here this morning. I read it after you got on the witness stand, Mr. Moore, and you have asked a couple of things. I'm not sure what you want, but you wanted a chance to address the jury. The court would certainly give you that. You had the chance. Your attorney asked is there anything you wanted to say. You gave your statement. This is what you are looking for. Do you want to impress the jury again at the end of this?
>
> Defendant replied that he wished to apologize to the jury and the court for his interruptions. The court reminded him that he would be opening himself up to cross-examination. Defense counsel began to speak, "Your Honor-" but the court interrupted him saying, "[s]o you talk it over and whatever you want to do, that's fine. Okay. Have a nice break here." Nothing further was said about defendant's request.

Moore, 2002 WL 664104 at ** 2-4.

The jury convicted Mr. Moore of aggravated robbery and two counts of kidnapping, all with firearm specifications, and the trial court imposed maximum and consecutive sentences. Id. at *1.

Mr. Moore appealed his conviction to the Ohio Court of Appeals, raising eight assignments of error, including denial of the constitutional rights to effective assistance of counsel, self-representation, due process and a fair trial, as well as denial of his right to cross-examine witnesses and confront witnesses. Moore, 2002 WL 664104. The

7

state appellate court affirmed Mr. Moore's conviction, finding seven of his eight assignments of error without merit. The appellate court did find that the trial court violated Mr. Moore's right to due process when it failed to make a finding that the consecutive sentences imposed were not disproportionate to the offense. Mr. Moore's sentence was reversed and remanded for resentencing. Id. at 14. The Ohio Supreme Court denied leave to appeal on 29 January 2003. (Docket No.1).

Mr. Moore now petitions this Court for a writ of habeas corpus to remedy four alleged constitutional violations:

1. The trial court deprived the petitioner's Sixth and Fourteenth Amendment right to self-representation;

2. The trial court deprived the petitioner's Sixth Amendment right to effective assistance of counsel when it failed to make an adequate and timely inquiry into Petitioner Moore's complaints;

3. The petitioner was denied his constitutional right to cross-examine witnesses when the trial court improperly overruled his motion asserted under Ohio Crim. R. 16(b)(1)(g); and

4. The petitioner's Sixth Amendment right to confront a witness was denied when the trial court permitted a police officer to testify by reading from a police report.

(Docket Nos. 12, 26).[3]

## II. REPORT & RECOMMENDATION

---

[3] Mr. Moore was represented by counsel when he filed his initial habeas petition which listed only the first and second grounds for relief. Although Mr. Moore continues to be represented by this same counsel, Mr. Moore subsequently motioned this Court pro se to amend his petition to include the third and fourth grounds for relief. (Docket No. 26). The Court granted the motion.

8

This matter was referred on 24 February 2004 to Magistrate Judge Baughman for an R&R. (Docket No.7). Magistrate Judge Baughman filed his R&R on 27 July 2006. (Docket No. 32). Concluding that Mr. Moore's first ground for relief is meritorious, the Magistrate Judge advises that Mr. Moore should be granted a conditional writ, subject to being re-tried by the state. The R&R further recommends that ground two be dismissed as moot and that grounds three and four be dismissed as time-barred.

With regard to Mr. Moore's first claim for relief, the R&R relied on Faretta v. California, 422 U.S. 806 (1975) and McKaskle v. Wiggins, 465 U.S. 168 (1984) in breaking down its legal analysis into three steps: (1) whether the defendant made a clear, unambiguous and timely assertion of his right to self-representation; (2) whether the record demonstrates that the defendant's assertion was a knowing and voluntary waiver of his right to be represented by counsel; and (3) whether the defendant knowingly and voluntarily acquiesced to representation after asserting his right to self-representation. (Docket No. 32 pp. 19-20). The R&R recommends finding that although the state appellate court reasonably applied federal law when it implicitly found that Mr. Moore asserted his right to self representation, the appellate court unreasonably concluded that the trial court made the appropriate inquiry into Mr. Moore's request to proceed pro se.

The respondent vigorously objected to Magistrate Judge Baughman's R&R, arguing that, (1) the state appellate court did not make an implicit finding that Mr. Moore's actions constituted an invocation of his right to self-representation, (2) the Magistrate Judge erred in mandating a distinct three-step analysis of self-representation

9

claims that is not employed by the Supreme Court or the Sixth Circuit; and (3) the Magistrate Judge ignored the Supreme Court's holding in Wiggins. (Docket No. 34).

Under Fed. R. Civ. P. 72(b) and 28 U.S.C. § 636 (b)(1)(C), this Court reviews de novo those portions of the Magistrate Judge's R&R to which specific objections are made.  Upon review, this Court "may accept, reject, or modify, in whole or in part, the findings and recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). In the Sixth Circuit, objections to a magistrate judge's R&R "must be clear enough to enable the district court to discern those issues that are dispositive and contentious." Miller v. Currie, 50 F.3d 373, 380 (6th Cir. 1995).

As Mr. Moore does not object to the R&R's recommendation that grounds two through four of his petition be denied, the Court will adopt the Magistrate Judge's recommendation on these grounds without further review.  Thus, this Court will only review de novo the portion of the R&R to which the respondent objects, that the state trial and appellate courts acted contrary to Mr. Moore's right to self-representation.

### III.  LAW AND ANALYSIS

The Sixth Amendment guarantees criminal defendants the right to counsel and the right of self-representation in criminal proceedings.  Faretta, 422 U.S. 806.  These two rights are correlative in that the right to the latter is conditional on the waiver of the former.  United States v. Conder, 423 F.2d 904, 908 (6th Cir. 1970) ("The right to defend pro se and the right to counsel have been aptly described as two faces of the same coin." Internal quotations omitted.).  Accordingly, a criminal defendant shall be permitted to represent himself only after he "knowingly and intelligently" relinquishes his right to

counsel. Faretta, 422 U.S. at 835 (citing the well-established standard set forth in Johnson v. Zerbst, 304 U.S. 458, 464-65 (1938)).  The Supreme Court directs trial courts to serve in a protective role when a defendant asserts his right to proceed pro se: "Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." Id.[4] The unconstitutional denial of the right to self-representation is "a structural error, the remedy for which is a new trial." Jones v. Jamrog, 414 F.3d 585, 594 (6th Cir. 2005) (citing Wiggins, 465 U.S. at 177 n. 8).

**A. Respondent's Objections to the Report and Recommendation**

The respondent argues that the "crux of the Magistrate Judge's error in this case emanates from his stated belief that Faretta and Wiggins mandate an identifiable, separate three-step analysis for all self-representing claims." (Docket No. 34 p. 2).  This Court disagrees with this assertion because the Magistrate Judge's analysis is wholly consistent with the well-established case law governing the rights to counsel and self-representation.  Faretta holds that the right to self-representation is protected by the Sixth Amendment, but that assertion of this right requires the waiver of the Sixth

---

[4] The Sixth Circuit further explains: "Although on average reasonable people might agree that it is in a criminal defendant's best interest to seek representation, ultimately, it is the defendant who must be free to personally decide whether in his particular case counsel is to his advantage. This choice is at once a choice to exercise an independent Sixth Amendment right, the right to represent oneself, and a choice to forgo another Sixth Amendment right, the right to counsel. The choice, therefore, is in part a waiver and thus must be made knowingly, intelligently, and voluntarily." Jones v. Jamrog, 414 F.3d 585, 592 (6th Cir. 2005) (internal citations and quotations omitted).

11

Amendment right to effective assistance of counsel. 422 U.S. at 835. Wiggins holds that once a pro se defendant invites or agrees to any substantial participation by counsel, subsequent appearances by counsel are presumed to be within the defendant's acquiescence. Accordingly, the R&R reviews the trial record and appellate opinion for appropriate review of Mr. Moore's (1) assertion of right to self-representation, (2) a knowing and intelligent waiver of right to counsel, and (3) whether Mr. Moore's continued representation by counsel was tantamount to Mr. Moore withdrawing his assertion and waiver. The R&R does not create a new legal analysis for self-representation violation claims, as alleged by the respondent, but instead the R&R is enumerating its analysis for sake of clarity.

The respondent further objects to the R&R's recommendation that this Court uphold the state appellate court's finding that Mr. Moore's actions constituted an invocation of his right to self-representation. Specifically, the respondent argues that the Magistrate Judge "simply misread the Court of Appeals opinion" because the appellate court made no such finding. This Court disagrees with the respondent on this point. The appellate opinion states that Mr. Moore "requested permission to proceed pro se in his letter to the court, [but] then immediately contradicted his request by having his attorney continue to defend him." Moore, 2002 WL 664104 at * 5. The opinion goes on to criticize the trial judge for his failure "to properly address defendant's complaint at a time when the defendant could have acted on his own behalf." Id. Based on these statements, this Court agrees with the R&R that the state appellate court found that Mr. Moore had asserted his right to proceed pro se. Accordingly, this Court finds the respondent's objection on this ground to be without merit.

12

Finally, the respondent contends that the R&R disregarded Wiggins which provides that once a defendant agrees to participation by counsel in his defense, appearances by counsel is presumed to be with the defendant's acquiescence.  The Court disagrees with the respondent.  Wiggins holds, "once a pro se defendant invites or agrees to any substantial participation by counsel, subsequent appearances by counsel must be presumed to be with the defendant's acquiescence . . . ."   In Wiggins, the Supreme Court described the defendant as having constantly changed his mind in his efforts to proceed pro se: "Early in the trial Wiggins insisted he wished to proceed entirely without assistance, but shortly thereafter he expressly agreed that counsel should question a witness on voir dire.  Wiggins objected vehemently to some of counsel's motions, but warmly embraced others."  465 U.S. at 183.   Based on these facts, the Supreme Court concluded that Wiggins' complaints concerning his counsel's representation lost much of its force.  For reasons explained below, the facts in the case before this Court are distinguishable from those in Wiggins, and the Court agrees with the R&R that the analysis of the state appellate court is an unreasonable application of clearly established federal law.

**B.  Assertion of right to proceed pro se**

The decisive questions in this matter are whether the trial court constitutionally denied Mr. Moore his right to self representation, and whether the state appellate court reasonably applied Faretta and Wiggins when it concluded that Mr. Moore's participation in a direct examination by his lawyer constitutes a waiver of his right to self representation.

Mr. Moore asserted his right to self representation but the trial judge

13

unconstitutionally denied him the right by failing to conduct an inquiry into whether Mr. Moore was willing to waive his right to counsel. On the morning of 14 September 2000, Mr. Moore raised questions about his counsel's effectiveness and expressly asked the trial judge twice, "Can I go pro se?" (Tr. at 843). In that same colloquy, Mr. Moore explained to the judge that he believed he had no other option but to proceed pro se. Id. After telling Mr. Moore that he could not proceed pro se (Tr. at 843-44), the trial judge changed his mind and informed Mr. Moore that the court would consider his request to proceed pro se upon a written motion to the court. Id. at 844. Mr. Moore submitted a written motion to the court, stating if his attorney did not represent him in a manner that Mr. Moore determined was to his best advantage, he requested that the court "allow [him] to proceed pro se [sic] after a reasonable continuance (48 hrs)" for the purpose of reviewing documents, formulating a trial strategy, and preparing his closing argument.[5] The trial judge did not address the motion upon receiving it. Instead, he took possession of the letter and then seated the jury and instructed the defense to proceed with its case. Considering the context in which Mr. Moore's oral and written requests were asserted, this Court finds that Mr. Moore asserted his Sixth Amendment right to self-representation.

Therefore, the dispositive issue in this matter becomes whether the trial judge conducted the appropriate inquiry on the record as to whether Mr. Moore was making a knowing and intelligent waiver of his right to counsel in order to proceed pro se. A trial

---

[5] The trial judge directed Mr. Moore on the morning of 14 July to draft the motion on his lunch hour and submit it to the court after the lunch break. Mr. Moore complied with the court's order. Mr. Moore's attorney did not deliver the motion to the trial judge until the following morning.

judge must thoroughly investigate the circumstances under which a waiver of right to counsel is made in order to ensure the waiver is made with the defendant's "eyes wide open." Fowler v. Collins, 253 F.3d 244, 249 (6th Cir. 2001). In Mr. Moore's case, the trial judge never made such an inquiry. He accepted Mr. Moore's written request, and then instructed the defense to proceed with its case in chief, which included calling Mr. Moore as the first of two witnesses. By the time the trial judge addressed the written motion, a substantial portion of the defense's case had already been presented. These are simply not facts which support a waiver under Wiggins. The trial court unconstitutionally denied Mr. Moore his right to self-representation by its refusal to timely address the request.

The state appellate court concluded that because Mr. Moore permitted himself to be examined on the stand by counsel, this conduct constituted a waiver of his right to self-representation under Wiggins. Wiggins held that a defendant's Sixth Amendment rights are not violated when a trial judge appoints standby counsel to relieve the trial judge of the need to explain and enforce basic rules of courtroom protocol and the rules of procedure and evidence. The Supreme Court further held that participation by stand-by counsel to steer a pro se defendant through the trial proceedings is not a violation of the Sixth Amendment right to self representation. The flaw in the appellate court's analysis in this case is that Mr. Moore did not at any point act as his own counsel, he was he never appointed stand-by counsel, nor was he even afforded the opportunity to proceed pro se. He is not asserting that stand-by counsel interfered with his Sixth Amendment right to self-representation, but rather that the trial judge interfered with his right when he failed to entertain Mr. Moore's repeated requests to proceed pro se. The

15

trial judge accepted Mr. Moore's written motion and then instructed the defense counsel to proceed despite not having read or considered the motion. As the trial judge gave no indication that he would delay the trial to consider Mr. Moore's request, the only other option Mr. Moore had at that point would be to refuse to take the stand and participate in his own defense. This is hardly a choice for a criminal defendant.[6] Accordingly, the Court agrees with the Magistrate Judge's recommendation that Moore's participation in a direct examination by his counsel was not a waiver of his right to self-representation and the state appellate court unreasonably applied Faretta and Wiggins.

For the reasons set forth above, the state trial court unconstitutionally denied the petitioner his Sixth Amendment right to self-representation and the state appellate court's conclusion that Mr. Moore knowingly, intelligently and voluntarily waived his right to counsel is an unreasonable application of clearly established Supreme Court precedent. Such a constitutional violation may be remedied by a new trial. Jamrog, 414 F.3d at 594.

### IV. CONCLUSION

---

[6] In Jones v. Jamrog, the defendant standing trial for felonious assault in a Michigan state court was dissatisfied with his counsel's representation. 414 F.3d at 587-88. He requested and was denied access to the state's evidence. Id. In explaining to the trial judge his concerns, Jones articulated his belief that he had no other choice but to proceed pro se because of the court's order that he not speak in court and that defense counsel need not provide him with copies of the state's documentary evidence. Id. at 587. In granting Jones' habeas petition, the Sixth Circuit recognized that his belief that he had "no choice" was not to be taken literally, but rather the statement reflected a strategic decision in light of his dissatisfaction with his legal representation.

The Court adopts Magistrate Judge Baughman's recommendation and grants a conditional writ of habeas corpus, subject to the Mr. Moore being retried by the state, on the grounds of the state's denial of the petitioner's Sixth Amendment right to self-representation.  Accordingly, the petitioner's judgment and conviction in State of Ohio v. John Moore, Cuyahoga County Court of Common Pleas No. CR 392440 is vacated and set aside and the petitioner shall be released from custody unless the State of Ohio commences a new trial against him within 120 days after this judgment becomes final.

The Court further adopts the Magistrate Judge's recommendation and denies grounds two through four of Mr. Moore's petition.

IT IS SO ORDERED.

/s/ Lesley Wells
UNITED STATES DISTRICT JUDGE

Date: 28 February 2007